UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIAS MORALES,

                              Plaintiff,

        v.

RELATED MANAGEMENT COMPANY,
LP d/b/a/ ARMORY PLAZA SENIOR
HOUSING, et al.

                              Defendants.

No. 13-CV-8191 (KMK)

OPINION AND ORDER

Appearances:

Elias Morales
White Plains, NY
*Pro Se Plaintiff*

Andrew Leslie Margulis, Esq.
Kristen Lee Molloy, Esq.
Ropers, Majeski, Kohn & Bentley
New York, NY
*Counsel for Defendants Related Management
Company, LP d/b/a Armory Plaza Senior
Housing, Denise Velez, Armory Manager, and
Armory Plaza Senior Housing*

Jennifer Ellen Blain, Esq.
Leigh Aaron Wasserstrom, Esq.
Assistant United States Attorneys for the
Southern District of New York
New York, NY
*Counsel for Defendants Sponso by Housing
and Urban Development, HUD-VASH
Housing Program for Veterans, and Robin
Bell*

KENNETH M. KARAS, District Judge:

Pro se Plaintiff Elias Morales ("Plaintiff") filed the instant Amended Complaint against Related Management Company, LP, d/b/a/ Armory Plaza Senior Housing, Armory Manager, as individual and other members of Related Management Company LP, and Armory Plaza Senior Housing (collectively, the "Armory Defendants"); Denise Velez ("Velez"); and the Department of Housing and Urban Development ("HUD") and Robin Bell ("Bell") (collectively, the "Federal Defendants"), alleging various constitutional and statutory violations arising from the rejection of Plaintiff's application for an apartment at Armory Plaza, an affordable housing complex in White Plains, New York.[1]  Liberally construed, the Amended Complaint alleges violations of Plaintiff's due process rights, violations of the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, et seq. (the "FHA"), and a claim for relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq., 701 et seq. (the "APA"). (*See* Pl.'s Am. Compl. ("Am. Compl.") (Dkt. No. 6).)  Before the Court is the Federal Defendants' Motion To Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* Mot. To Dismiss ("Mot.") (Dkt. No. 41).)  For the following reasons, the Federal Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, opposition papers, and the documents attached thereto, and are taken as true for the purpose of resolving the instant Motion.  Plaintiff is 66 years of age and a Vietnam War veteran.  (Am. Compl. ¶ III.C.)  Plaintiff was a forensic psychologist for 30 years before he suffered a stroke, after which he was "placed

---

[1] Velez's name is incorrectly spelled on the docket as Denis, instead of Denise.  The Clerk of the Court is respectfully requested to correct this error.

in the HUD-VASH for wartime veterans and veterans with medical conditions."  (*Id.*)[2]  In

December 2009, Plaintiff and his wife applied for an apartment at Armory Plaza.  (*Id.*)  Plaintiff

alleges that at that time Velez, the property manager of Armory Plaza, "started the formation of

the contractual process and background checks."  (*Id.*)  Plaintiff claims that Velez was

"impressed with Plaintiff['s] perfect rental history," and explained that Plaintiff and his wife

would be placed on a waiting list.  (*Id.*)

Plaintiff also alleges that he "reminded [] Velez[] that the Department of Veterans Affairs

and Housing and Urban Development [was] responsible for screening."  (*Id.*)  According to

Plaintiff, Ms. Danko ("Danko"), the case manager for the Section 8 HUD-VASH program, is

responsible for screening all families "in accordance with V.A. screening criteria," and the

"Public Housing Authority" does not have "the authority to screen any potentially eligible family

members or deny assistance for any grounds permitted under 24 C[.]F[.]R[.] 982.552."  (*Id.*; *see

also* Pl.'s Opp'n to Mot. To Dismiss ("Pl.'s Opp'n") 11 (Dkt. No. 44).)[3]

Velez "rented the room [that Plaintiff and his wife wanted] to someone else without [a]

due process hearing."  (Am. Compl. ¶ III.C.)  Along with his papers filed in opposition to the

instant Motion, Plaintiff attaches a letter dated October 29, 2013 from Velez to Plaintiff

informing him that his application for housing had been rejected because he did "not me[e]t the

---

[2] "The Department of Housing and Urban Development—VA Supportive Housing
(HUD-VASH) Program is a joint effort between HUD and VA to move [v]eterans and their
families out of homelessness and into permanent housing.  HUD provides housing assistance
through its Housing Choice Voucher Program (Section 8) that allows homeless [v]eterans to rent
privately owned housing.  VA offers eligible homeless [v]eterans clinical and supportive services
through its health care system across the 50 states, the District of Columbia, Puerto Rico[,] and
Guam."  Homeless Veterans, U.S. Dep't of Veteran Affairs, http://www.va.gov/homeless/hud-
vash.asp (last visited Nov. 27, 2015).

[3] Plaintiff's primary filing in opposition, (Dkt. No. 44), includes a number of attachments
with inconsistent pagination.  To avoid confusion, the Court's references to page numbers of that
filing correspond to the ECF page numbers stamped on the top of each page.

standard screening criteria established by the owner." (Pl.'s Opp'n 21.)  In particular, Velez indicated that Plaintiff's "documented rental payment history (or other documented payment history) shows that [Plaintiff had] not made consistent and timely payments." (*Id.*)  The letter explains that the decision "was based in whole or in part on information obtained from CoreLogic Safe Rent." (*Id.*)  Moreover, the letter informed Plaintiff that he has the right to receive a copy of the information contained in his credit file and to "dispute with the credit reporting agency the accuracy or completeness of any information in the consumer report furnished by the agency." (*Id.*)  Finally, the letter notified Plaintiff that he has "the right to respond in writing or . . . contact the site within [14] days of [the] letter to request a meeting to discuss [the] decision," and if Plaintiff is an individual with disabilities, he has "the right to inform [Armory Plaza] of this fact and request reasonable accommodations in nonessential policies and practices to provide [him] equal opportunity and to participate in the informal hearing process." (*Id.* at 22.)  Plaintiff claims that on December 19, 2013, Danko told Plaintiff that it was determined that he and his wife no longer "me[]t [the] HUD-VASH program." (Am. Compl. Attachment at 1.)

Plaintiff claims that in rejecting his request for an apartment at Armory Plaza, both Velez and Bell, the coordinator for HUD-VASH at the Montrose Veterans Administration, "did not follow[] the HUD-VASH pro[to]col." (*Id.*)  According to Plaintiff, "[t]he HUD-VASH coordinator and case manager [are] the key [p]oint[s] of [c]ontact . . . between [Plaintiff], the medical center (Montrose)[,] the [Public Housing Authority,] . . . and the landlord." (*Id.*)  Plaintiff complains that he was "not provided representation," (*id.* at 2), did not have "the opportunity to participate in behind the back door planning," (*id.*), and was "given information [that was] different from other applicants," (Pl.'s Opp'n 10).  Moreover, Plaintiff states that

4

Defendants' "actions were done with malice[,] fraud[,] [and] deliberate oppression."  (Am. Compl. ¶ V; *see also* Pl.'s Opp'n 4.)  In particular, Plaintiff claims that the CoreLogic Report does not reflect any "adverse issues."  (Pl.'s Sur-Reply to Further Mot. To Dismiss by Resp't ("Pl.'s Reply") 3 (Dkt. No. 48).)  Finally, Plaintiff alleges that the "agency" is biased, and therefore, his failure to "exhaust[]" should be excused.  (Am. Compl. ¶ V.)

As a result of Defendants' alleged actions Plaintiff "suffered [and] sustained general damages," including the fact that he had to "research, file[,] and contact other senior housings," and that he "suffered psychological issues, sleep deprivation[,] . . . [and] was not able to sustain the pain and suffering and lack of safety."  (*Id.* ¶ IV; *see also* Pl.'s Opp'n 4.)  Plaintiff requests monetary and injunctive relief.  Specifically, Plaintiff requests $2,000,000 in damages, that Defendants pay Plaintiff's costs for storage and other costs Plaintiff incurred, and that Defendants refrain from "any discriminatory [and] violative acts against Plaintiff and [his] wife both now [and] in the future."  (Am. Compl. ¶ V; *see also* Pl.'s Opp'n 4.)

B.  Procedural History

Plaintiff filed his original Complaint on November 15, 2013.  (Dkt. No. 2.)  On November 21, 2013, the Court granted Plaintiff's request to proceed in forma pauperis.  (Dkt. No. 4.)  On December 17, 2013, the Honorable Loretta A. Preska, Chief Judge of this Court, issued an Order directing Plaintiff to file an amended complaint.  (Order To Amend (Dkt. No. 5).)  The Order stated, in relevant part, that Plaintiff's Complaint failed to comply with Federal Rule of Civil Procedure 8(a) and did "not make clear whether he took . . . steps [to challenge the information that CoreLogic Safe Rent provided to Defendants]," and explained that Plaintiff could not "assert a due process violation if he fail[ed] to pursue an available review process."  (*Id.* at 3, 5.)  Moreover, the Order explained that while Plaintiff asserted "that the agency showed

'bias' towards him," he "fail[ed] to explain on what grounds the agency showed bias, and he [did] not allege any facts supporting that allegation." (*Id.* at 5.)  Accordingly, the Order directed Plaintiff to "submit an amended complaint that provides facts explaining what occurred after he received the rejection notice and the nature and grounds of his allegation of bias." (*Id.*)

On December 26, 2013, Plaintiff filed the instant Amended Complaint.  (Dkt. No. 6.) Pursuant to a Scheduling Order issued after a Pre-Motion Conference on October 8, 2014, (Dkt. Nos. 33, 36), the Federal Defendants filed the instant Motion To Dismiss the Amended Complaint and accompanying papers on December 22, 2014.  (Dkt. Nos. 41–43.)  Plaintiff submitted his papers in opposition to the Motion on December 31, 2014, to which he attached, among other things, the aforementioned letter from Velez dated October 29, 2013 denying Plaintiff's application for housing at Armory Plaza, documents from CoreLogic Safe Rent, a Housing Discrimination Complaint, a chart titled "HUD-VASH Program Structure," and HUD regulations.  (Dkt. No. 44.)  Plaintiff also submitted a letter dated February 5, 2015 to the Court, to which he attached a letter dated January 14, 2012 from Plaintiff and his wife to the manager of Armory Plaza and a Supreme Court Case, *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) (per curiam).  (Dkt. No. 45.)  The Federal Defendants filed their reply on March 6, 2015, (Dkt. No. 46), and Plaintiff filed a sur-reply on March 17, 2015, (Dkt. No. 48).  Plaintiff also filed a letter dated June 30, 2015, alerting the Court to the Supreme Court's decision *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015). (Dkt. No. 53.)

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff."  *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)."  *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This difference as to the allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules.  *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

### 1. Rule 12(b)(1)

"'A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint.'" *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc)). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also N.Y. State Citizens' Coal. for Children v. Carrion*, 31 F. Supp. 3d 512, 516 (E.D.N.Y. 2014) (same).

### 2. Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alterations omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

        For the purposes of the Federal Defendants' Motion To Dismiss, the Court is required to consider as true the factual allegations contained in the Amended Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).  Moreover, it is appropriate to consider statements made by Plaintiff "submitted in response to a defendant[']s request for a pre-motion conference" for the purpose of resolving the instant Motion.  *Jones v.*

*Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013).

Finally, the Court construes "the submissions of a pro se litigant . . . liberally" and interprets

them "to raise the strongest arguments that they *suggest*."   *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and some italics omitted).

> B.  Subject Matter Jurisdiction

Among other relief, Plaintiff seeks $2,000,000 in damages from the Federal Defendants.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from

suit."  *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (internal quotation marks

omitted); *see also Diaz v. United States*, 517 F.3d 608, 611 (2d Cir. 2008) (same); *Hunt v.*

*Delvechhio*, No. 10-CV-686, 2010 WL 2948573, at *4 (N.D.N.Y. July 1, 2010) (explaining that

HUD is "an executive department of the government" and therefore a suit against HUD "is a suit

directly against the United States" (internal quotation marks omitted)).  "The waiver of sovereign

immunity is a prerequisite to subject matter jurisdiction."  *Presidential Gardens Assocs. v. U.S.*

*ex rel. Sec. of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999).  "[W]aivers of sovereign

immunity must be 'unequivocally expressed' in statutory text, and cannot simply be implied."

*Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Nordic Vill.,*

*Inc.*, 503 U.S. 30, 33 (1992)).  Moreover, a plaintiff bears the burden to demonstrate that

sovereign immunity has been waived.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d

Cir. 2000) ("[T]he plaintiff bears the burden of establishing that [his or] her claims fall within an

applicable waiver.").

In general, sovereign immunity precludes a due process claim for money damages against

the United States, its agencies, and an officer in her official capacity.  *See Adeleke*, 355 F.3d at

151–52 (holding that monetary awards for government destruction or loss of property are barred

by sovereign immunity); *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *8 (E.D.N.Y. Sept. 2, 2014) (holding that the plaintiff's claims against, among other defendants, the HUD Director of Public Housing in her official capacity were barred by sovereign immunity); *Moore v. United States*, 609 F. Supp. 682, 684 (E.D.N.Y. May 17, 2008) (holding that the plaintiff's due process claim against the Postal Service was barred by sovereign immunity); *Bokel v. NYPD Property Clerk Div.*, No. 06-CV-2849, 2008 WL 899404, at *7 (E.D.N.Y. Apr. 3, 2008) (explaining that in *Adeleke* the Second Circuit held "that sovereign immunity deprives the district court of jurisdiction over a plaintiff's due process claim for money damages"); *Morchik v. United States*, No. 06-CV-2946, 2007 WL 2746704, at *3 (E.D.N.Y. Sept. 18, 2007) (same); *Sharrock v. Harris*, 473 F. Supp. 1173, 1175 (S.D.N.Y. 1979) ("Suit against an officer in [his or] her official capacity . . . is treated as a suit against the United States itself, and is thereby limited by the doctrine of sovereign immunity.").  Accordingly, absent a waiver, the Court does not have subject matter jurisdiction over claims against HUD and Bell in her official capacity for money damages.  Plaintiff brings this action under 28 U.S.C. §§ 1331 and 1343, but neither of these jurisdictional statutes waives the sovereign immunity of the United States.  *See Doe v. Civiletti*, 635 F.2d 88, 94 (2d Cir. 1980) ("Section 1331 is in no way a general waiver of sovereign immunity."); *Nowlin v. 2 Jane Doe Female Rochester N.Y. Police Officers*, No. 11-CV-712, 2012 WL 1415704, at *6 (W.D.N.Y. Mar. 28, 2012) (explaining that neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1343 constitutes a waiver of sovereign immunity).  Additionally, "§ 1343 is not applicable to claims against a federal agency."  *Nowlin*, 2012 WL 1415704, at *6 (citing *District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973)).  There is no waiver of sovereign immunity, then, as to Plaintiff's due process claim.

11

Moreover, although Section 10(a) of the APA, 5 U.S.C. § 702(a) "waives sovereign immunity for claims of 'legal wrong [sustained] because of agency action,' . . . it pertains only to suites 'seeking relief other than monetary damages.'" *Adeleke*, 355 F.3d at 152 n.7 (first alteration in original) (quoting 5 U.S.C. § 702(a)); *see also Bonilla v. United States*, No. 06-CV-1198, 2008 WL 4104579, at *3 n.10 (E.D.N.Y. Sept. 4, 2008) ("As plaintiff is seeking money damages, the APA is of no help to plaintiff."); *Adeyi v. United States*, No. 06-CV-3842, 2008 WL 793595, at *6 (E.D.N.Y. Mar. 25, 2008) (holding that the plaintiff could not state a claim for money damages under the APA). Likewise, "the FHA does not include a waiver of sovereign immunity." *Bennett v. N.Y.C. Hous. Auth.*, 248 F. Supp. 2d 166, 170 (E.D.N.Y. 2002) (citing *Almonte v. Pierce*, 666 F. Supp. 517, 524 (S.D.N.Y. 1987)); *see also Super v. J. D'Amelia & Assocs., LLC*, No. 09-CV-831, 2010 WL 3926887, at *12 (D. Conn. Sept. 30, 2010) ("There is no congressional abrogation of sovereign immunity in the FHA."); *United States v. Livecchi*, No. 03-CV-6451, 2005 WL 2420350, at *22 (W.D.N.Y. Sept. 30, 2005) ("[N]othing in the National Housing Act suggests that Congress intended HUD to be liable for money damages for constitutional violations."); *Weisberg v. Leon*, No. 96-CV-2661, 1999 WL 1216663, at *2 (S.D.N.Y. Dec. 20, 1999) (dismissing the plaintiff's complaint seeking monetary relief from HUD because the FHA "does not create an express or implied private right of action"). Plaintiff's claims for money damages against HUD and Bell in her official capacity, therefore, are dismissed for lack of subject matter jurisdiction.

C.  Due Process Claim

Plaintiff alleges that he was denied due process when his application for an apartment at Armory Plaza was rejected. "A . . . due process claim entails a two-part inquiry to first 'determine whether [the plaintiff] was deprived of a protected interest,' and, if so, 'what process

12

was his due.'"  *Rosu v. City of New York*, 742 F.3d 523, 526 (2d Cir. 2014) (quoting *Logan v.*

*Zimmerman Brush, Co.*, 455 U.S. 422, 428 (1982)); *see also Junior v. City of New York, Hous.*

*Pres. & Dev. Corp.*, No. 12-CV-3846, 2013 WL 646464, at *6 (S.D.N.Y. Jan. 18, 2013) (same).

Turning to the first inquiry, Plaintiff has not adequately alleged that he was deprived of a

protected interest.  To begin, "[i]t is well established that Section 8 tenants have a property

interest in continuing to receive assistance payments."  *Junior*, 2013 WL 646464, at *6; *see also*

*Rios v. Town of Huntington Hous. Auth.*, 853 F. Supp. 2d 330, 338 (E.D.N.Y. 2012) (same and

collecting cases).  Here, however, as the Federal Defendants argue, Plaintiff has not alleged that

his assistance payments were terminated or reduced.  (*See* Defs. HUD's and Robin Bell's Mem.

of Law in Supp. of Mot. To Dismiss the Compl. as Against Them ("Defs.' Mem.") 8 (Dkt. No.

42) ("Plaintiff does not allege that he was denied assistance payments.").)  The Court notes that

in his Amended Complaint, Plaintiff claims that Danko, one of "Bell[']s case manager[s]," told

Plaintiff on December 19, 2013 that Plaintiff and his wife "no longer meet [sic] HUD-VASH

PROGRAM."  (Am. Compl. Attachment at 1.)  While the Court is prepared to liberally construe

this statement to suggest that Plaintiff's benefits were terminated, Plaintiff subsequently made

clear in his opposition papers that he does not allege that his assistance was terminated.

Specifically, Plaintiff states that his "Section 8 was never terminated nor HUD-VASH."  (Pl.'s

Reply 2; *see also* Letter from Elias Morales to Court (Sept. 2, 2014) ("Sept. 2 Letter") 2 (Dkt.

No. 30) (explaining that Plaintiff "is still and will be a member of HUD-VASH").)[4]

---

[4] Of course, if Plaintiff wishes to press a claim that his assistance payments were
terminated, Plaintiff may file a Second Amended Complaint to make that clear.  It is worth
noting, however, that at least some courts have held that "[w]hile the HUD-VASH program is
generally administered by HUD . . . participation in the program is regulated by the VA national
office," and, therefore, "the denial of HUD[-]VASH benefits is within the purview of the
Secretary of Veterans Affairs under [] 38 U.S.C. § 511(a)."  *Bluestein v. U.S. Dep't of Hous. &*
*Urban Dev.*, No. 13-CV-247, 2013 WL 6627965, at *3 (D.N.H. Dec. 16, 2013) (quoting *Smart v.*

Accordingly, this is not a case where Plaintiff's assistance payments were allegedly terminated and, therefore, the property interest that he claims is well-settled.  *See Junior*, 2013 WL 646464, at *6 ("Here, however, unlike most Section 8 cases in which courts have found the existence of a protected property interest, [the] [p]laintiffs' assistance payments were not terminated.").

Instead, Plaintiff's claim is based on Armory Plaza's rejection of his application for an apartment.  In other words, Plaintiff asserts a property interest in a specific apartment.  To determine whether a plaintiff has a property interest, "a court must focus on the applicable statute, contract, or regulation that purports to establish the benefit."  *Roth v. City of Syracuse*, 96 F. Supp. 2d 171, 177 (N.D.N.Y. 2000) (citing *Martz v. Incorp. Village of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994)).  Plaintiff's claim concerns his Section 8 assistance in connection with the HUD-VASH program.  Accordingly, the Court looks to the applicable statute and regulations governing this assistance.  The United States Housing Act, 42 U.S.C. § 1437, et seq. ("The Housing Act"), was enacted to provide housing assistance for low-income families.  "The HUD-VASH program combines HUD rental assistance for homeless veterans with case management and clinical services provided by the VA at its medical centers" and is "generally

---

*U.S. Dep't of Veteran Affairs*, 759 F. Supp. 2d 867, 872 (W.D. Tex. 2010)) (some alterations and internal quotation marks omitted).  Section 511(a) provides:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

Accordingly, district courts have held that they lack jurisdiction to adjudicate claims challenging the denial of benefits under the HUD-VASH program. *See Bluestein*, 2013 WL 6627965, at *3. However, because Plaintiff does not allege that he was denied benefits under the HUD-VASH program and the Federal Defendants do not address the issue of the Court's subject matter jurisdiction to address such a claim, there is no need to decide this issue in resolving the instant Motion.

administered pursuant to the HUD Housing Choice Voucher Program (HCV)." *Smart v. U.S. Dep't of Veteran Affairs*, 759 F. Supp. 2d 867, 872 (W.D. Tex. 2010).  The HCV, which is "generally administered by State or local governmental entities called public housing agencies (PHAs)," in turn, provides rental subsidies to tenants who choose to rent housing units in the private market.  24 C.F.R. § 982.1(a)(1).  Eligible families "select and rent units that meet program housing quality standards," and then if the PHA approves a specific unit and tenancy, "the PHA contracts with the owner to make rent subsidy payments on behalf of the family." *Id*. Under the HCV, the owner of a rental housing unit is "responsible for screening of families on the basis of their tenancy histories," which includes the payment of rent. *Id.* § 982.307(a)(3). Similarly, the regulations provide that under "Section 8 project-based assistant programs," Section 8 owners are responsible for determining applicant eligibility for residence in the property, *see id.* § 5.655(b)(1), and must "notify any assistance applicant or participant in writing of any adverse findings made on the basis of [income verification]," *id.* § 5.236(c).  Accordingly, HUD's applicable regulations permit the owners of rental housing units to "screen families on the basis of their tenancy histories," which includes the payment of rent.  24 C.F.R. § 982.307(a)(3); *see also Austin Apartment Ass'n v. City of Austin*, 89 F. Supp. 3d 886, 890 (W.D. Tex. 2015) (explaining that "landlords who participate in the [HCV] may screen prospective tenants and reject them if screening reveals red flags in terms of paying rent and utility bills"); *Sutton v. Freedom Square Ltd.*, No. 07-CV-14897, 2008 WL 4601372, at *4 (E.D. Mich. Oct. 15, 2008) ("[A]pplicable regulations permit a landlord to make inquiry into a prospective tenants [sic] ability to meet the requirements of tenancy[,] which includes screening for credit history."); *Bourbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 87 (D.D.C. 2008) ("Landlords remain free not to rent to voucher holders provided they do so on . . . legitimate,

non-discriminatory grounds, such as an applicant's rental history or criminal history."). Therefore, Plaintiff cannot claim a property interest in the approval for an apartment of his choice when the applicable regulations explicitly permit Section 8 owners to screen applicants based on their tenancy histories.  *Cf. Junior*, 2013 WL 646464, at *6 (rejecting the plaintiffs' claim that requiring the plaintiffs to pay a larger share of rent relative to their income was unfair under the first step of the due process analysis because "they [had] not identified any entitlement to a protected property interest" where "the statute that governs the [HCV] Program explicitly creates a permissible ceiling as to tenants' rental shares . . . which [was] followed").

It is worth noting that Plaintiff cites to 24 C.F.R. § 982.552 in his Amended Complaint and opposition papers, which explains the processes by which a PHA "may deny assistance for an applicant or terminate assistance for a participant under the [relevant] programs."  This regulation is inapplicable to Plaintiff's claims because, as explained above, Plaintiff does not allege that he was denied assistance or terminated from the HUD-VASH or general Section 8 programs, but rather that he was denied a specific apartment at Armory Plaza.  Likewise, the portions of the Federal Register that Plaintiff attaches to his opposition papers explain the screening requirements to determine whether a family is eligible for the HUD-VASH program, not whether a family is entitled to a specific apartment or unit.  (*See* Pl.'s Opp'n 38–42.)

Even assuming that Plaintiff has a property interest in a specific apartment, Plaintiff does not adequately allege that the Federal Defendants denied him due process.  The Housing Act mandates that each PHA shall:

> establish and implement an administrative grievance procedure under which tenants will—
> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
> (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (l) of this section;

16

(3) have an opportunity to examine any documents or records or regulations related to the proposed action;
(4) be entitled to be represented by another person of their choice at any hearing;
(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and
(6) be entitled to receive a written decision by the public housing agency on the proposed action.

42 U.S.C. § 1437d(k).  The grievance procedure, in turn, "must conform to federal regulations codified in 24 C.F.R. part 966, subpart B." *Sager v. Hous. Com'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 550 (D. Md. 2012); *see also Rios*, 853 F. Supp. 2d at 342 (same).  Specifically, and as relevant here, the regulations provide that "[a]ny grievance shall be personally presented, either orally or in writing, to the PHA office or to the office of the project in which the complainant resides so that the grievance may be discussed informally and settled without a hearing."  24 C.F.R. § 966.54.  If a recipient's grievance "cannot be resolved through an informal meeting, a resident is entitled to the opportunity for a hearing conducted by an impartial person or panel."  *Sager*, 855 F. Supp. 2d at 550 (citations omitted) (describing grievance process).

Here, however, Plaintiff has not alleged an "adverse public housing agency action" that would have triggered these procedures.  Indeed, Plaintiff does not allege that the Federal Defendants denied him any process under the applicable statute and regulations, *see Rios*, 853 F. Supp. 2d at 342–43 (explaining that the plaintiff did "not assert any defects in the [applicable] regulatory requirements . . . and [did] not claim that she was provided with inadequate notice or did not have the opportunity to be heard before an impartial decision maker"), or that he "personally presented" his grievance to the Federal Defendants to initiate the grievance process, 24 C.F.R. § 966.54.  Instead, Plaintiff alleges that Armory Plaza denied him a specific apartment—in particular that "Velez rented the room [for which Plaintiff applied] to someone else without [a] due process hearing."  (Am. Compl. ¶ III.C.)  Plaintiff points to no statute, regulation, or policy that mandates a Section 8 owner to provide an applicant with a due process

17

hearing before rejecting his application for a specific apartment.  Instead, the only applicable

regulation that the Court has found is that a Section 8 owner must "notify any assistance

applicant or participant in writing of any adverse findings made on the basis of [income

verification]."  24 C.F.R. § 5.236(c).  Here, Velez notified Plaintiff by letter that Armory Plaza

rejected his application because of his rental payment history.  (*See* Pl.'s Opp'n 21.)  Moreover,

the letter indicated that Plaintiff had "the right to respond in writing or . . . contact [Armory

Plaza] within [14] days of [the] letter to request a meeting to discuss [the] decision."  (*Id.* at 22.)[5]

Yet, Plaintiff does not allege that he pursued any of these avenues to pursue his interest in that

apartment.  Accordingly, even assuming a property interest, Plaintiff has failed to allege that the

Federal Defendants deprived him of due process.  Plaintiff's due process claim against the

Federal Defendants is, therefore, dismissed.

### D.  FHA Claim

In response to the Federal Defendants' pre-motion letter dated August 18, 2014, (Dkt.

No. 29), Plaintiff claims that the Federal Defendants discriminated against him in violation of the

FHA, (Sept. 2 Letter 1).  Plaintiff does not, however, allege a violation of the FHA in his

Amended Complaint.  Nevertheless, Plaintiff presses an FHA claim in his opposition papers,

(Pl.'s Opp'n 10), and attached, without explanation, a Housing Discrimination Complaint against

Velez dated January 1, 2014, (*id.* at 35), and filed a letter notifying the Court of the Supreme

Court's decision *Texas Department of Housing & Community Affairs v. Inclusive Communities*

*Project, Inc.*, 135 S. Ct. 2507 (2015), which concerns the FHA, (Dkt. No. 53).  Accordingly, the

Court construes Plaintiff's filings as asserting a claim under the FHA.

---

[5] The Court does not address any claims against the Armory Plaza Defendants or Velez in
resolving the instant Motion.

The purpose of the FHA is "to provide, within constitutional limitations, for fair housing throughout the United States."  42 U.S.C. § 3601.  Enacted as Title VIII of the Civil Rights Act of 1968, the FHA "originally barred discrimination in housing on the basis of race, color, religion, or national origin, and Congress added gender as a protected class in 1974."  *Williams v. N.Y.C. Hous. Auth.*, 879 F. Supp. 2d 328, 334 (E.D.N.Y. 2012) (quoting *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 (11th Cir. 2008)) (internal quotation marks omitted).  "The Fair Housing Act makes it unlawful '[t]o refuse to . . . rent after the making of a bona fide offer, or to refuse to negotiate for the . . . rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.'"  *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003) (first alteration in original) (quoting 42 U.S.C. § 3604(a)); *Williams*, 879 F. Supp. 2d at 334 (same).  The statute similarly provides that "property owners and their agents may not 'unlawfully discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling.'"  *Mitchell*, 350 F.3d at 47 (quoting 42 U.S.C. § 3604(b)).

"[T]he Fair Housing Amendments Act of 1988 . . . extended the Fair Housing Act's principle of equal opportunity in housing to individuals with [disabilities] [by] making it unlawful to 'discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person.'"  *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 252 (S.D.N.Y. 2014) (alteration omitted) (quoting 42 U.S.C. § 3604(f)(2)(A) (internal quotation marks omitted)); *see also Williams*, 879 F. Supp. 2d at 334 (noting that "[i]n 1988, Congress amended the FHA to prohibit discrimination based on handicap and familial status" (internal quotation marks omitted)).  As amended, then, the statute makes it "unlawful . . . '[t]o

discriminate in the . . . rental, or to otherwise make unavailable or deny, a dwelling to any . . . renter because of a handicap of that . . . renter . . . or any person associated with that . . . renter."  42 U.S.C. § 3604(f)(1); *see also Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 152 (2d Cir. 2014) (same); *Logan*, 57 F. Supp. 3d at 252 (same); *Freeland v. Sisao LLC*, No. 07-CV-3741, 2008 WL 906746, at *3 (E.D.N.Y. Apr. 1, 2008) (same).  Discrimination for the purpose of this subsection includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [an individual with a disability] equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B); *see also Williams*, 879 F. Supp. 2d at 335 (same).  A plaintiff may show that a defendant has engaged in discrimination proscribed by the FHA under "three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003); *see also Candlehouse, Inc. v. Town of Vestal*, No. 11-CV-93, 2013 WL 1867114, at *6 (N.D.N.Y. May 3, 2013) (same); *Williams*, 879 F. Supp. 2d at 335 (same); *Kennedy v. Related Mgmt.*, No 08-CV-3969, 2009 WL 2222530, at *4 (S.D.N.Y. July 23, 2009) (same).

To the extent that Plaintiff alleges that the Federal Defendants violated his rights under the FHA, this claim fails because the statute provides no express or implied right of action against HUD or its officers.  Any person who has been injured by a discriminatory housing practice may file a complaint with the Secretary of HUD (the "Secretary") one year after the alleged discriminatory housing practice has occurred or terminated.  42 U.S.C. § 3610(a)(1)(A)(i).  The FHA provides that after the filing of a complaint, the Secretary shall, within 100 days, "determine based on the facts whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur."  *Id.* § 3610(g)(1).  If the

Secretary finds reasonable cause, the Secretary shall issue a charge on behalf of the complainant. *See id.* § 3610(g)(2)(A).  On the other hand, "[i]f the Secretary determines that no reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, the Secretary shall promptly dismiss the complaint" and make "public disclosure of each such dismissal."  *Id.*§ 3610(g)(3).  Irrespective of the Secretary's determination, a plaintiff may commence a civil action under the FHA within two years "after the occurrence or the termination of an alleged discriminatory housing practice."  *Id.* § 3613(a)(1)(A).

The FHA is "silent as to whether HUD's determination to dismiss a complaint is reviewable in federal court," and accordingly, "there is clearly no express right of action pursuant to the FHA."  *Marinoff v. U.S. Dep't of Hous. & Urban Dev.*, 892 F. Supp. 493, 496 (S.D.N.Y. 1995), *aff'd* 78 F.3d 64 (2d Cir. 1996) (per curiam) (adopting the reasoning of the district court's opinion and the magistrate judge's report and recommendation "in its entirety").  Thus, courts have found that a "plaintiff may not sue HUD under the FHA because the FHA provides no . . . implied right of action against HUD."  *Marinoff*, 892 F. Supp. at 496.  Accordingly, for example, there is no cause of action against HUD under the FHA for failure to investigate a complaint.  *See Hunt*, 2010 WL 2948573, at *4 ("The Second Circuit has specifically held . . . that the individual complainant has no cause of action against HUD under the FHA for the alleged failure to properly investigate a complaint." (citing *Marinoff v. U.S. Dep't of Hous. & Urban Dev.*, 78 F.3d 64 (2d Cir. 1996)), *adopted by* 2010 WL 2948148 (N.D.N.Y. July 22, 2010); *cf. Godwin v. Sec. of Hous. & Urban Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004) (finding no express or implied cause of action under the FHA).  Plaintiff's FHA claim against the Federal Defendants, then, is dismissed.

21

E.  APA Claim

Plaintiff does not explicitly claim a violation of the APA.  Nevertheless, because HUD is a federal agency, the Court addresses any possible claims Plaintiff could bring under the APA, which allows for judicial review of federal agency action for any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  Here, Plaintiff does not complain of a specific agency action.  Instead, liberally construing the Amended Complaint, Plaintiff alleges that Bell did not "follow[] the HUD-VASH pro[to]col," (Am. Compl. Attachment at 1), and/or HUD failed to investigate Plaintiff's claim of discrimination, (Pl's Opp'n 35).  In other words, the agency actions complained of are Bell's failure to follow protocol and HUD's failure to act.  The Court addresses each of these claims in turn.

It is a "long-settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."  *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991); *see also Ryan v. Burwell*, No. 14-CV-269, 2015 WL 4545806, at *11 (D. Vt. July 27, 2015) (same).  Accordingly, an allegation that an agency did not follow its own regulations could give rise to a claim under the APA.  Here, however, Plaintiff does not identify what "protocols" Bell failed to follow.  Although Plaintiff references 24 C.F.R. § 982.552, this regulation is inapplicable to Plaintiff's alleged harm, for the reasons explained above.  Moreover, as also addressed above, Plaintiff fails to allege that he that "personally presented, either orally or in writing," any grievance to Bell or HUD or any other party or agency to trigger applicable grievance procedures under HUD's regulations.  24 C.F.R. § 966.54. Although the Court construes Plaintiff's Amended Complaint liberally, it is still unclear, without more, what procedures Bell failed to follow.

As to HUD's alleged failure to act, "[u]nder the APA, 'agency action' also includes 'failure to act.'" *Seabrook v. Obama*, No. 14-CV-4431, 2015 WL 4635617, at *3 (S.D.N.Y. Aug. 4, 2015) (quoting 5 U.S.C. § 551(13)). "Courts are permitted to 'compel agency action' that has been 'unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. § 706(1)). However, "[t]he Supreme Court has explained that when a plaintiff challenges an agency's failure to act, the challenge is reviewable under the APA 'only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Sharkey v. Quarantillo*, 541 F.3d 75, 89 n.13 (2d Cir. 2008) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004)); *see also Seabrook*, 2015 WL 4635617, at *4 (same); *Thompson v. Donovan*, No. 13-CV-2988, 2014 WL 5149037, at *6 (S.D.N.Y. Oct. 14, 2014) (same).

Here, Plaintiff does not allege that HUD was required to take any action. Moreover, to the extent that by attaching his Housing Discrimination Complaint to his opposition papers Plaintiff claims that HUD failed to investigate the allegations contained therein, this claim fails, at least at this juncture. First, Plaintiff has not alleged that the Secretary failed to answer his Housing Discrimination Complaint in accordance with the procedure explained above. Second, the Housing Discrimination Complaint is dated January 1, 2014, (Pl.'s Opp'n 35), while Plaintiff filed the initial Complaint on November 15, 2013, (Dkt. No. 2), and the instant Amended Complaint on December 26, 2013, (Dkt. No. 6). Accordingly, Plaintiff's Complaints pre-date his filing of the Housing Discrimination Complaint, so the Housing Discrimination Complaint cannot form the basis of his alleged claims against the Federal Defendants in the Complaint or the Amended Complaint.

F.  *Bivens* Claim

In addition to asserting claims against HUD and against Bell in her official capacity,

Plaintiff asserts claims against Bell in her individual capacity.  (*See* Pl.'s Reply 2.)  Although

Plaintiff characterizes his claims against Bell as claims pursuant to 42 U.S.C. § 1983, (*see* Pl.'s

Opp'n 13), because Bell is a federal actor, the Court construes these claims under *Bivens v. Six

Unknown Named Agents of Federal Bureau of Narcotics* ("*Bivens*"), 403 U.S. 388 (1971).  *See

Feldman v. Lyons*, 852 F. Supp. 2d 274, 278 (N.D.N.Y. 2012) (construing the pro se plaintiff's

complaint as pressing a *Bivens* action, instead of an action pursuant to § 1983, because "*Bivens*

actions, although not precisely parallel, are the federal analog to § 1983 actions against state

actors" (citing *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987))); *Hunt*, 2010 WL 2948573, at *5

("Plaintiff's claims against HUD employees in their individual capacities[] would have to be

brought under *Bivens*.").

In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for

damages against federal officers alleged to have violated a citizen's constitutional rights.'"  *Arar*,

585 F.3d at 571 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)); *see also

M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (same).  "The purpose of the *Bivens*

remedy is to deter individual federal officers from committing constitutional violations."  *Arar*,

585 F.3d at 571 (internal quotation marks omitted).  A remedy under *Bivens* "is a judicially

created remedy," and, therefore, "federal courts have been reluctant to recognize such implied

relief."  *M.E.S.*, 712 F.3d at 671.

To begin, it is not clear that a private right of action under *Bivens* is appropriate against

Bell.  The Supreme Court has explained that "'consideration of a *Bivens* request follows a

familiar sequence that involves two inquiries: (1) whether there is 'any alternative, existing

process for protecting the' affected interest that 'amounts to a convincing reason for the Judicial Branch to refrain from providing a new damages remedy'; and (2) whether, 'even in the absence of such alternative, . . . any special factors counsel hesitation before authorizing a new kind of federal litigation.'" *Id.* (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)) (some alterations omitted).  Here, as explained above, the Fair Housing Act and its implementing regulations provide for due process procedures when a person has been denied assistance or his assistance has been terminated.  *See* 42 U.S.C. § 1437d(k).  Moreover, as also discussed above, applicable regulations provide considerations that a Section 8 owner may take into account when considering an application for an apartment.  *See* 24 C.F.R. § 982.307(a) (explaining the applicable screening process).  Indeed, in similar, albeit not identical circumstances, courts have held that there is no private right of action for due process violations in connection with the administration of government benefits.  *See Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (holding that there is no cause of action for money damages against government officials who administer the federal Social Security program); *Sugrue v. Derwinski*, 26 F.3d 8, 12–13 (2d Cir. 1994) (holding that there is no *Bivens* remedy for an alleged due process violation in connection with the denial of veterans' benefits).  Finally, like the Federal Defendants, the Court has not found any decisions in the Second Circuit that have recognized a private right of action against an individual HUD defendant in his or her individual capacity in connection with claims for Section 8 benefits.  (*See* Defs.' Mem. 11.)

The Court need not, however, decide whether Plaintiff has an implied right of action pursuant to *Bivens* against Bell because Plaintiff has not adequately alleged that Bell violated his constitutional rights.  *See Sloan v. Dep't of Hous. & Urban Dev.*, 231 F.3d 10, 18 (D.C. Cir. 2000) (declining to "decide whether the APA preclude[d] [the] appellants' *Bivens* claims,

25

because [the court found] that [the] appellants [had] failed to allege the violation of a constitutional right"); *Alston*, 2014 WL 4374644, at *8 (holding that the plaintiff's *Bivens* complaint against an official of HUD in her individual capacity failed "because the amended complaint [was] devoid of any specific unconstitutional conduct engaged in by the[] federal defendants that caused him injury"); *Hunt*, 2010 WL 2948573, at *5 (holding that in the absence of an underlying constitutional violation by the individual HUD employees, the plaintiff's *Bivens* claim could not stand); *Southeast Grant St. Guild Hous. Dev. Fund Co., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, No. 91-CV-8358, 1992 WL 73419, at *8 (S.D.N.Y. Mar. 31, 1992) (dismissing the plaintiff's claims under *Bivens* against the individual HUD defendants because "[t]he real problem is that there is nothing approaching a description of any element of a violation of due process rights").  To the extent that Plaintiff alleges that Bell failed to properly investigate his Housing Discrimination Complaint, (*see* Pl.'s Opp'n 14 (explaining that Bell "participated directly in the alleged constitutional violation after being informed of the violation through[] a report or appeal, [but] failed to remedy the wrong")), "[i]t is well-settled that [a] plaintiff has no constitutional right to an investigation of any sort by government officials." *Hunt*, 2010 WL 2948573, at *5 (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008)).  Moreover, as explained above, Plaintiff filed the instant lawsuit before he filed the Housing Discrimination Complaint and, thus, any alleged action or inaction resulting from the Housing Discrimination Complaint cannot form the basis of Plaintiff's claims against Bell.

Furthermore, while Plaintiff requests that HUD "refrain from fabricating [an] underlying discriminatory rational[e] to keep Plaintiff and [his] wife out of Armory Apartments," (Am. Comp. ¶ V), and states that Bell, with Velez, intended "to carry out promised action," (Pl.'s

Reply 3), Plaintiff fails to explain what role, if any, Bell had in denying his application for the apartment or in otherwise discriminating against Plaintiff. Instead, the allegations in the Amended Complaint and the papers attached thereto suggest that Velez, as manager of Armory Plaza, made the decision to deny Plaintiff's application based on Plaintiff's rental history. In a *Bivens* action, a plaintiff "must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006); *see also Alston*, 2014 WL 4374644, at *7 (same); *Smith v. Virgin Islands Hous. Auth*, No. 09-CV-11, 2011 WL 285858, at *7 (D. V.I. Jan. 28, 2011) (dismissing a claim against an individual HUD defendant because "a *Bivens* claims cannot be sustained on the basis of vicarious liability"). Without more, the Court is unable to discern how Bell violated Plaintiff's constitutional rights and, accordingly, dismisses the claims against her in her individual capacity. *See Hunt*, 2010 WL 2948573, at *6 ("It is unclear why the failure to investigate constitutes discrimination by HUD or by the individual HUD defendants."); *Southeast Grand St. Guild Hous. Dev. Fund Co., Inc.*, 1992 WL 74419, at *8 (dismissing the claims against the individual HUD defendants because the cause of action against them was "totally lacking in substance").

### III. Conclusion

In light of the foregoing analysis, the Court grants the Federal Defendants' Motion To Dismiss Plaintiff's Amended Complaint without prejudice. Plaintiff is given 30 days to file a Second Amended Complaint. The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 41.)

SO ORDERED.

DATED:    December 2 , 2015
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

27