UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIAS MORALES,

               Plaintiff,

    -v-

RELATED MANAGEMENT COMPANY, LP d/b/a
ARMORY APARTMENTS, et al.,

           Defendants.

Case No. 13-CV-8191 (KMK)

OPINION & ORDER

---

Appearances:

Elias Morales
White Plains, NY
*Pro Se Plaintiff*

Jennifer E. Blain, Esq.
Leigh A. Wasserstrom, Esq.
Peter M. Aronoff, Esq.
United States Attorney's Office
Southern District of New York
New York, NY
*Counsel for Defendants United States*
*Department of Housing and Urban Development*
*and Robin Bell*

KENNETH M. KARAS, District Judge:

      Plaintiff Elias Morales ("Plaintiff") brings this pro se Action against Robin Bell ("Bell")

and the United States Department of Housing and Urban Development ("HUD") (collectively,

the "Federal Defendants"), as well as Related Management Company, LP, d/b/a Armory

Apartments, alleging various constitutional and statutory violations arising from his enrollment

in the HUD-Veterans Affairs Supportive Housing ("HUD-VASH") Program, and specifically the

rejection of Plaintiff's application for an apartment at Armory Plaza Senior Housing ("Armory

Plaza"), an affordable housing complex in White Plains, NY.  Before the Court is the Federal

Defendants' Motion To Dismiss the Second Amended Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).  (*See* Notice of Mot. To Dismiss (Dkt. No. 72).)  For the following

reasons, the Federal Defendants' Motion To Dismiss is granted.

I.  Background

A.  Factual Background

The following facts are collected from Plaintiff's Second Amended Complaint,

opposition papers, and the documents attached thereto, and are taken as true for the purpose of

resolving the instant Motion.

Plaintiff is a 68-year-old disabled Vietnam War veteran.  (Second Am. Compl. ("SAC") 4

(Dkt. No. 66).)[1]  He receives assistance from the HUD-VASH Program "for wartime veteran[s]

seeking [a]ssistance within the community and government agencies."  (*Id.*)[2]  On December 9,

2009, Plaintiff "passed by" Armory Plaza, which Plaintiff describes as "senior citizen [S]ection 8

housing . . . , especially [for] handicap[ped] seniors."  (*Id.* at 7–8.)[3]  That same day, Plaintiff and

---

[1] Due to inconsistent paragraph numbers, any citations to the Second Amended Complaint (and attached exhibits) are made to the ECF-generated numbers stamped on the top of each page.

[2] "HUD-VASH is a collaborative program between HUD and VA [that] combines HUD housing vouchers with VA supportive services to help [v]eterans who are homeless and their families find and sustain permanent housing.  Through public housing authorities . . . HUD provides rental assistance vouchers for privately owned housing to [v]eterans who are eligible for VA health care services and are experiencing homelessness.  VA case managers may connect these [v]eterans with support services such as health care, mental health treatment[,] and substance use counseling to help them in their recovery process and with their ability to maintain housing in the community."  Homeless Veterans, U.S. Dep't of Veterans Affairs, http://www.va.gov/homeless/hud-vash.asp (last visited Sept. 19, 2016).

[3] Pages seven and eight of the Second Amended Complaint are transposed in the version of the document filed on ECF.

his wife first met Denise Velez ("Velez"), a member of the management team at Armory Plaza. (*Id.* at 4, 7.)[4]  Plaintiff and his wife discussed "requirements for lateral transfer" with Velez, and received a tour of the building and one of its one-bedroom units.  (*Id.*)  Armory Plaza's interior "was designed with ample room for disabled individuals."  (*Id.* at 7.)  More specifically, the one-bedroom apartments "w[ere] appropriate[ly] designed . . . for individual[s] with spatial [and] depth perceptual deficits and restrictive mobility[;] [t]he equipment was within reach of the disabled tenant[;] [and] [t]he entry, exit, and hallway [was] designed for the senior with neurological and physical restriction[s]."  (*Id.*)

Several weeks after his visit, Plaintiff completed an application for housing at Armory Plaza and interviewed with Velez.  (*Id.* at 7, 9.)  Velez informed Plaintiff that he and his wife would be placed on the waiting list.  (*Id.* at 9.)  Plaintiff told Velez that the Department of Veterans Affairs and HUD "mandate" that veterans not be placed on the waiting list, but Velez "appeared dismissive" of his statement.  (*Id.*)  Plaintiff and his wife later met Velez for a "follow-up interview," which Plaintiff describes as "grossly inconsistent with the initial [i]nterview."  (*Id.*)  Velez asked both Plaintiff and his wife "where are you from?"  (*Id.*)  Plaintiff describes the question as "a sort of mixed race question," and questions whether the "underlying reasoning" of the question "was that [a] mixed racial couple may not be admitted?"  (*Id.*)  Velez informed the couple that they would be notified by mail if their position on the waiting list changed, and instructed them to send a "letter of interest every quarter" to preserve their status. (*Id.* at 9; *see also id.* at 17.)

---

[4] The Court notes that Denise Velez, though initially a named Party, was not included as a named Defendant in Plaintiff's Second Amended Complaint.  (*Compare* Am. Compl. (Dkt. No. 6), *with* SAC.)

3

Plaintiff observed "several move-ins" by "white seniors and one Asian [senior]" during the first two years Plaintiff and his wife spent on the waiting list.  (*Id.* at 9.)[5]  Plaintiff approached one "'potential' tenant" to ask whether "anyone in the family [was in the] military," and was told no one in the family had a military background.  (*Id.*)

Various materials attached to Plaintiff's filings indicate Plaintiff filed one or more complaints with federal agencies alleging housing discrimination.  First, on January 1, 2014, Plaintiff filed a Housing Discrimination Complaint with the Department of Veterans Affairs.  (*See* Pl.'s Resp. to Federal Defs.' Mot. To Dismiss ("Pl.'s Opp'n") Ex. A (Dkt. No. 74).)  The Housing Discrimination Complaint states that Plaintiff received an application rejection letter on October 29, 2013.  (*Id.*)  The Second Amended Complaint attaches a March 10, 2014 letter from the U.S. Department of Justice Civil Rights Division, Housing and Civil Enforcement Section.  (*See* SAC 18.)  The letter is "in response to [Plaintiff's] correspondence concerning [his] complaint of . . . housing discrimination against . . . Armory Plaza."  (*Id.*)  The letter informs Plaintiff that based on the "information included in [his] correspondence," "it is unclear whether [his] rights under the Fair Housing Act [had] been violated," and directs Plaintiff to file a complaint with HUD "within a year" of when the "alleged discriminatory act occurred" if he wished to continue to pursue his claim.  (*Id.*)

---

[5] At some point after being placed on the waiting list, Plaintiff contacted United States congresswoman Nita Lowey to request assistance with his continued difficulties acquiring housing at Armory Plaza.  (SAC 9, 17.)  Lowey responded on May 10, 2012, advising Plaintiff that one of her subordinates had spoken to a Related Management Company representative and had been informed that "there ha[d] been no vacancies [for] the past two years."  (*Id.* at 17.)  Lowey reminded Plaintiff to "continue sending in recertification letters every six months" and to keep in mind that "the wait time is currently two to three years."  (*Id.*)

B.  Procedural Background

Plaintiff initiated this Action on November 15, 2013.  (Dkt. No. 2.)  On December 17, 2013, the Honorable Loretta A. Preska issued an Order stating that Plaintiff had not satisfied Federal Rule of Civil Procedure 8(a) and directing Plaintiff to file an amended complaint.  (Order To Amend (Dkt. No. 5).)  Plaintiff subsequently filed the Amended Complaint on December 26, 2013.  (Dkt. No. 6.)  The Federal Defendants filed a Motion To Dismiss the Amended Complaint, which was fully submitted on March 17, 2015.

The Court issued an Opinion & Order (the "Opinion") on December 2, 2015, granting the Federal Defendants' Motion To Dismiss and granting Plaintiff leave to file a second amended complaint.  (Dkt. No. 57.)  Plaintiff filed the Second Amended Complaint on December 21, 2015.  (Dkt. No. 66.)  Pursuant to a briefing schedule set by the Court in a January 8, 2016 memo endorsement, (Dkt. No. 70), the Federal Defendants filed a Motion To Dismiss the Second Amended Complaint as against the Federal Defendants (the "Motion") and accompanying papers on February 29, 2016, (Dkt. Nos. 72–73).  Plaintiff filed a memorandum in opposition to the Motion on March 23, 2016, (Dkt. No. 74), and, on April 14, 2016, the Federal Defendants submitted a reply, (Dkt. No. 81).[6]

## II.  Discussion

A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

---

[6] Plaintiff has filed a number of letters or other documents with the Court since he filed his opposition papers.  (*See* Dkt. Nos. 78, 79, 82, 87.)

of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, internal

quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (internal quotation marks and alterations

omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the

line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R.

Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-

technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions.").

   "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency

of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted));

6

*Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d

601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

### 1.  Claims Adjudicated in the Court's Prior Opinion

In its previous Opinion, the Court liberally construed Plaintiff's Amended Complaint to raise the following claims:  (1) a procedural due process claim; (2) a claim under the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* (the "FHA"); (3) a claim under the Administrative Procedures Act (the "APA"); and (4) a *Bivens* claim against Bell.  (*See generally* Opinion & Order ("Opinion") (Dkt. No. 57).)  The Court dismissed each claim, but did so without prejudice, to allow Plaintiff to remedy the deficiencies identified by the Court.  After review of the Second Amended Complaint, the Court once again finds that, to the extent the above four claims are re-asserted by Plaintiff, they must be dismissed.

### a.  Procedural Due Process Claim

The Second Amended Complaint asserts a claim under "the Due Process Clauses of the Fifth and Fourteenth Amendments."  (SAC 2.)  In the prior Opinion, this Court dismissed Plaintiff's procedural due process claim on two grounds.  First, Plaintiff failed to "adequately allege[] that he was deprived of a protected interest."  (Opinion 13.)  Second, even if such a protected interest existed, "Plaintiff [did] not adequately allege that the Federal Defendants denied him due process."  (*Id.* at 16.)[7]

---

[7] As the Court also concluded in its prior Opinion, "[t]here is no waiver of sovereign immunity . . . as to Plaintiff's due process claim," and, therefore, any due process claim for money damages against HUD and/or Bell in her official capacity must be dismissed for lack of subject matter jurisdiction.  (Opinion 11–12.)

The Second Amended Complaint again fails to identify the denial of a protected property interest.  At the outset, as with the Amended Complaint, the Second Amended Complaint complains of the denial of Plaintiff's application for a *specific apartment*, (*see generally* SAC 7–10), but the Court has already held that Plaintiff does not have a protected property interest in a specific apartment, (*see* Opinion 14–16).[8]  Thus, any procedural due process claim brought related to Plaintiff's inability to procure housing at Armory Plaza fails.

However, Plaintiff's allegations can also be liberally construed to allege that he was denied adequate case management services in connection with his receipt of HUD-VASH housing assistance.  For example, Plaintiff complains that Bell did "not follow[] [the] Department of Veterans Affairs HUD-VASH Program Internal Operating Protocol."  (Pl.'s Opp'n 1.)  He alleges that she breached protocol "by not responding for five years to our request for assistance."  (*Id.* at 3.)  He further contends that she "had a duty to all American Veterans in her jurisdiction[,] [she] did not comply with her professional role[,] [s]he refused to assist in emergency situation[s] or advocate according to the Department of Veterans Affairs Benefit contract[,] [and she had a] conscious disregard for veteran's medical issues [and] community need[s]."  (*Id.* at 3–4.)  Construing Plaintiff's Second Amended Complaint "liberally and interpret[ing] [it] to raise the strongest arguments that [it] suggest[s]," *Sykes*, 723 F.3d at 403

---

[8] In the Opinion, the Court noted that "it is well established that Section 8 tenants have a property interest in continuing to receive assistance payments," (Opinion 13 (alteration omitted) (quoting *Junior v. City of N.Y., Hous. Pres. & Dev. Corp.*, No. 12-CV-3846, 2013 WL 646464, at *6 (S.D.N.Y. Jan. 18, 2013))), and advised Plaintiff that, if his assistance payments were terminated, he should so allege in his Second Amended Complaint, (*id.* at 13 n.4).  Once again, Plaintiff does not allege that his assistance payments were terminated or that he was removed from the Section 8 HUD-VASH Program.  In fact, the Second Amended Complaint appears to confirm that he remains a member.  (*See* SAC 4 ("Plaintiff *is in* the Department of Veteran Affairs, [S]ection 8 HUD-VASH [P]rogram[] . . . ." (emphasis added)).)

(internal quotation marks omitted), the Court will consider whether Plaintiff's allegations amount to the denial of a property interest.

The Due Process Clause's "procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972). Importantly, "[a] mere 'unilateral expectation' of receiving a benefit is not . . . enough" to create a property right in the benefit; rather, "a property interest arises only where one has a 'legitimate claim of entitlement' to the benefit." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (quoting *Roth*, 408 U.S. at 577). "In determining whether a given benefits regime creates a 'legitimate claim of entitlement' to such benefits, [the Court] ask[s] whether the statutes and regulations governing the distribution of benefits 'meaningfully channel official discretion by mandating a defined administrative outcome.'" *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015) (alteration and some internal quotation marks omitted) (quoting *Kapps*, 404 F.3d at 113); *see also Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 347 (S.D.N.Y. 2015) (same).

The Court assumes that Plaintiff's mention of a "Department of Veterans Affairs HUD-VASH Program Internal Operating Protocol" is actually a reference to the HUD Notice (the "Notice") entitled "Section 8 Housing Choice Vouchers: Revised Implementation of the HUD-VA Supportive Housing Program." *See* 77 Fed. Reg. 17,086 (Mar. 23, 2012) ("Notice"). The Notice "establishes the policies and procedures for the administration of tenant-based Section 8 Housing Choice Voucher . . . rental assistance under the [HUD-VASH] program." *Id.* The Court thus looks here to determine whether Plaintiff has a legitimate claim of entitlement to services through the HUD-VASH program beyond rental assistance. The Notice lists "Case Management Requirements," which include responsibilities for participating VA Medical Center

("VAMC") supportive service sites and Community-Based Outpatient Clinics ("CBOC").  *Id.*

§ 2(h).  Such responsibilities include "identifying the social service and medical needs of HUD-

VASH participants and providing, or ensuring the provision of, regular ongoing case

management, outpatient health services, hospitalization, and other supportive services as needed

throughout the veterans' participation period."  *Id.*

 Relevant language throughout the Notice, however, indicates that case management

services are not an automatic entitlement for any veteran who qualifies for housing assistance

through the HUD-VASH program.  Indeed, the Notice alludes to the possibility of "VAMC or

CBOC determin[ing] that the participant family no longer requires case management," and

makes clear that such a determination "is not grounds for termination of assistance."  *Id.*; *cf.*

§ 2(g)(4) ("If the family no longer requires case management, there are no portability

restrictions.").  And as noted above, VAMC and CBOC are to "ensur[e] the provision of" the

services "*as needed* throughout the veterans' participation period," *id.* § 2(h) (emphasis added),

indicating discretionary provision of the services.[9]  Thus, "the administrative scheme," with

respect to case management services, "does not require a certain outcome, but merely *authorizes*

particular actions and remedies," and, as such, "does not create 'entitlements' that receive

constitutional protection under the [Due Process Clause]."  *Sealed v. Sealed*, 332 F.3d 51, 56 (2d

Cir. 2003); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is

not a protected entitlement if government officials may grant or deny it in their discretion.");

*Furlong v. Shalala*, 156 F.3d 384, 394 (2d Cir. 1998) ("[W]hen a benefit is denied, and that

---

[9] It bears mentioning that the Notice describes the case management services as "a
condition of receiving" rental assistance.  *See* Notice § 2(h).

action results from an exercise of official discretion, entitlement to the benefit occurs only when official discretion is so narrowly confined as virtually to guarantee conferral of the benefit.").

Moreover, even if Plaintiff did have a property right in the provision of case management services, he does not allege that Bell, or anyone else, determined that he no longer required such services and denied Plaintiff the services in their entirety.  Rather, Plaintiff only alleges, vaguely, that Bell was generally derelict in her (unspecified) duties.  (*See, e.g.*, Pl.'s Opp'n 3 (alleging that Bell "had a duty to all American Veterans" but she "did not comply with her professional role"); *id.* at 4 (alleging that Bell exhibited "[c]onscious disregard for veteran's medical issues[,] [and] [c]ommunity need[s]").)  Indeed, the notes of a 2013 call between Bell and Plaintiff, attached by Plaintiff to the Second Amended Complaint, indicate that Plaintiff had been meeting quarterly with someone involved in Plaintiff's case management, (*see* SAC 21–22 (noting that "Ms. Danko" would "continue to meet with [Plaintiff] quarterly and will continue discussion of graduation at each visit, *including what case management services he thinks he needs*" (emphasis added))), and that his HUD-VASH case management services, at least at that time, had *not* been terminated, (*see id.* at 22 (Plaintiff was "told that [Bell] and Ms. Danko will also continue discussion of his graduation and *may make a determination* that there are no other HUD-VASH case management services from which he could benefit" (emphasis added))).[10]  Ultimately,

_____

[10] The Court notes that Plaintiff does not offer any allegations as to any *specific assistance* that he needed, but which was denied by Bell or others at HUD.  To the extent Plaintiff's allegation that Bell did "not respond[] for five years to our request for assistance," (Pl.'s Opp'n 3), can be interpreted as a reference to Bell having not taken action to address Plaintiff's position on the Armory Plaza waiting list, Plaintiff has not explained what HUD regulation required Bell to do so.  Indeed, it is the owner of the property, not HUD, that "is responsible for screening and selection of the family to occupy the owner's unit" and "for screening of families on the basis of their tenancy histories."  24 C.F.R. § 982.307(a)(2)–(3).

Plaintiff has not adequately alleged the denial of a property right and his due process claim against the Federal Defendants is dismissed.[11]

### b.  FHA Claim

Plaintiff again invokes the FHA and its implementing regulations.  (*See* SAC 2.)  The Court previously held that the FHA—which, among other things, prohibits discrimination in housing sales and rentals (*see* Opinion 19–20)—"provides no express or implied right of action against HUD or its officers," (*id.* at 20).  Plaintiff attempts to overcome this hurdle by relying on *Westchester v. United States Department of Housing & Urban Development*, 778 F.3d 412 (2d Cir. 2015).  (*See* Pl.'s Opp'n 3.)  But the Second Circuit's decision in *Westchester* did not address the issue of a private right of action under the FHA.  Rather, the principal issue was whether HUD's rejection of the county's fair housing strategy was an act "committed to agency discretion by law" and thus unreviewable under the APA.  *Westchester*, 778 F.3d at 416 (internal quotation marks omitted).  Because Plaintiff cannot assert an FHA claim against HUD or its officials, Plaintiff's FHA claim—to the extent it is brought against the Federal Defendants—is dismissed.

### c.  *Bivens* Claim

Plaintiff once more attempts to assert claims against Bell in her individual capacity.  (*See, e.g.*, SAC 4 ("[P]laintiff seeks recovery from the assets of the employee as opposed to the assets . . . of the United States."); Pl.'s Opp'n 1 ("Plaintiff [has] adequately pled [his] claims for relief against . . . Bell[] in her individual capacity . . . .").)  In the previous Opinion, the Court

---

[11] Once more, the Court need not decide whether, as some courts have held, "the denial of HUD-VASH benefits is within the purview of the Secretary of Veterans Affairs under 38 U.S.C. § 511(a) . . . [and thus] district courts . . . lack jurisdiction to adjudicate claims challenging the denial of benefits under the HUD-VASH program."  (Opinion 13 n.4 (alterations and internal quotation marks omitted).)

dismissed Plaintiff's *Bivens* claims because Plaintiff failed to "adequately allege[] that Bell violated his constitutional rights." (Opinion 25–26.)[12]  Plaintiff's Second Amended Complaint fails for the same reason, as none of the allegations regarding Bell's conduct rises to the level of a constitutional violation.

Although "a *Bivens* action alleging a violation of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts," *F.D.I.C. v. Meyer*, 510 U.S. 471, 484 n.9 (1994), as discussed above, Plaintiff has failed to adequately allege a violation of his procedural due process rights based on Bell's alleged failures to ensure adequate case management services. To the extent Plaintiff pursues a *Bivens* claim against Bell based on some form of discrimination, the Second Amended Complaint is bereft of *any* non-conclusory allegations indicating discriminatory motivation for any actions (or inaction) taken by Bell. (*Cf.* SAC 13 (referring, without elaboration, to "Bell['s] vicious discriminatory conduct"); Pl.'s Opp'n 6 (baldly alleging that Bell's note regarding her call with Plaintiff "is indicative of discrimination against Plaintiff[] because of Plaintiff's race . . . [and] is merely a cover-up for discrimination")).  Such conclusory statements are insufficient to state a plausible discrimination claim under *Twombly*.  *See, e.g.*, *Majeed v. ADF Cos.*, No. 11-CV-5459, 2013 WL 654416, at *7 (E.D.N.Y. Feb. 20, 2013) (dismissing discrimination claims where, "absent any non-conclusory factual allegations from which it may be reasonably inferred that [the] defendant's actions were motivated by discriminatory animus," the plaintiff failed to "move [the] complaint 'across the line from conceivable to plausible'" (quoting *Twombly*, 550 U.S. at 570)); *Williams v. Calderoni*, No. 11-CV-3020, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) (holding that "claims that [the

---

[12] The Court also expressed skepticism that a private right of action under *Bivens* would even be appropriate against Bell.  (*See* Opinion 24–25.)

plaintiff] 'was singled out because of his race,' and 'subject to racial and housing discrimination at least in part[] because of discriminatory animus,' . . . [were] insufficient to state a claim under . . . *Twombly* and *Iqbal*" (citation omitted)); *Horne v. Buffalo Police Benevolent Ass'n*, No. 07-CV-781, 2010 WL 2178813, at *6 (W.D.N.Y. May 28, 2010) ("A plaintiff alleging racial . . . discrimination must do more than recite conclusory allegations."). Finally, Plaintiff's contentions that Bell did not take accurate notes of her conversation with Plaintiff, violating "The Legal Mandate for Clinical Documentation in New York State," and that she "delegated professional duties to an unauthorized person" in violation of "[§] 6509 of Article 130 of Education Law and . . . Part 29 of the Rules of the Board of Regents," (*see* SAC 5–6), plainly do not allege constitutional violations.  Because Plaintiff has not plausibly alleged that Bell violated any of his constitutional rights, any *Bivens* claim against Bell must be dismissed.[13]

### d.  APA

As with Plaintiff's Amended Complaint, the Court construes Plaintiff's Second Amended Complaint as raising a claim under the APA.  Plaintiff's initial APA claim was dismissed because "Plaintiff [did] not complain of a specific agency action."  (Opinion 22.)  The Court liberally construed Plaintiff's Amended Complaint to allege that Bell "did not 'follow the HUD-VASH protocol,' and/or HUD failed to investigate Plaintiff's claim of discrimination."  (*Id.* at 22 (alterations and citation omitted).)  The claims were dismissed because Plaintiff did not allege "what procedures Bell failed to follow," and, among other things, Plaintiff did not "allege[] that

---

[13] As the Court held in the prior Opinion, "[t]o the extent that Plaintiff alleges that Bell failed to properly investigate his Housing Discrimination Complaint, 'it is well-settled that a plaintiff has no constitutional right to an investigation of any sort by government officials.'" (Opinion 26 (alterations and citation omitted) (quoting *Hunt v. Delvecchio*, No. 10-CV-686, 2010 WL 2948573, at *5 (N.D.N.Y. July 1, 2010)).)

the Secretary failed to answer his Housing Discrimination Complaint in accordance with the procedure" for doing so.  (*Id.* at 22–23.)

Plaintiff once more fails to allege that the Secretary did not properly answer his Housing Discrimination Complaint and so any APA claim on that basis is dismissed.  Plaintiff's filings do attempt to allege certain deficiencies in Bell's conduct, discussed earlier in the context of the Court's procedural due process analysis.  In short, Plaintiff alleges that Bell failed to follow HUD-VASH protocol when she did not provide certain unspecified assistance both to him and to veterans more generally.  (Pl.'s Opp'n 3–4.)  As with the earlier iteration of this claim, however, Plaintiff still fails to complain of a specific agency action.  "Agency action" is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13); *see also Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 882 (1990) (same).  "[W]hen a plaintiff challenges an agency's failure to act," as Plaintiff does here, "the challenge is reviewable under the APA 'only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take."  *Sharkey v. Quarantillo*, 541 F.3d 75, 89 n.13 (2d Cir. 2008) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004)).  But Plaintiff does not allege what discrete action Bell (or any HUD official) was required to take but did not.  Moreover, as explained above, HUD-VASH regulations merely require that case management services be provided "as needed," (Notice § 2(h)), and "no review of agency inaction is available when it is 'committed to agency discretion by law,'" *Seabrook v. Obama*, No. 14-CV-4431, 2015 WL 4635617, at *3 (S.D.N.Y. Aug. 4, 2015) (some internal quotation marks omitted) (quoting *Nat. Res. Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)).  Because Plaintiff does not challenge any reviewable "agency action," his APA claim is dismissed.

16

2.  Discrimination Claims

Plaintiff's Second Amended Complaint can be construed to raise new discrimination claims not previously considered by the Court.  The Second Amended Complaint refers to a host of statutes and regulations, including the 1866 Civil Rights Act (42 U.S.C. § 1981), 42 U.S.C. 1437f (governing Section 8 assistance) and its accompanying regulations, the Americans with Disabilities Act, § 504 of the Rehabilitation Act, and "state law against discrimination."  (*See* SAC 1–2.)  The Court notes that Plaintiff does not expressly state which claims, if any, are brought against the Federal Defendants, as opposed to Related Management.  It appears that the discrimination-related claims are brought against Related Management, based on the actions of Velez.  (*See, e.g.*, Pl.'s Opp'n 1 ("Plaintiff adequately pled [his] claims . . . against Defendant Robin Bell . . . for violation of not following Department of Veterans Affairs HUD-VASH Program Internal Operating Protocol[,] and Related Management Company . . . for discrimination [u]nder the Fair Housing Act.").)  In any event, to the extent the claims can be construed as being raised against the Federal Defendants, they must be dismissed.

Setting aside the issue of whether the Federal Defendants are even subject to suit under any of the statutory bases invoked, *see, e.g.*, *Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir. 2000) ("Title II of the ADA is not applicable to the federal government."); *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 583 (2d Cir. 1987) (although a private right of action may exist under the Rehabilitation Act where "the agency consciously and expressly abdicated its enforcement duties, . . . us[ed] improper procedures for approving funded programs, . . . acquiesced or actively participated in discriminatory practices, . . . or . . . wrongly refused to pursue further action when efforts to achieve voluntary compliance have failed," no private right of action exists where a plaintiff merely seeks "review of an agency's finding of no

17

discrimination" (internal quotation marks omitted)); *Farag v. United States*, 587 F. Supp. 2d 436,

471 (E.D.N.Y. 2008) ("Section 1981 claims do not lie against federal actors."); *Bennett v. N.Y.C.

Hous. Auth.*, 248 F. Supp. 2d 166, 171 (E.D.N.Y. 2002) ("[T]here is no implied private right of

action in favor of plaintiffs seeking declaratory and injunctive relief against a funding agency

under [§] 504 based on a claim that the agency has not adopted enforcement mechanisms over

and above those already in place."), there are absolutely no non-conclusory allegations in the

Second Amended Complaint or Plaintiff's opposition papers indicating any discriminatory

actions taken by HUD or any HUD official, including Bell.  Although Plaintiff refers to Bell's

"vicious discriminatory conduct," (SAC 13), and alleges that the copy of Bell's notes attached to

the Second Amended Complaint "is indicative of discrimination against Plaintiff, . . . [and] is

merely a cover-up for discrimination," (Pl.'s Opp'n 6), Plaintiff provides no facts to support

those conclusory allegations.  Plaintiff does not offer any non-conclusory allegations about any

HUD failures at the department-level related to discriminatory practices of Related Management

or other Section 8 owners or public housing authorities, nor does Plaintiff provide allegations

challenging any allegedly discriminatory practices of HUD.  (*Cf.* SAC 14 (stating without any

context or elaboration that damages should be based on, inter alia, "evidence of . . . [r]efusal to

prevent or eliminate discrimination" and "[c]onscious disregard for fair housing rights").)  Any

discrimination claims against the Federal Defendants therefore are dismissed.  *See, e.g.*, *Gordon

v. First Franklin Fin. Corp.*, No. 15-CV-775, 2016 WL 792412, at *11 (E.D.N.Y. Feb. 29, 2016)

("[The] [p]laintiff's conclusory allegations of discrimination are insufficient to state a plausible

claim under . . . the FHA . . . ."); *Bilal v. Westchester Cmty. Coll.*, No. 13-CV-3161, 2014 WL

2881217, at *5 (S.D.N.Y. June 25, 2014) ("Regardless of whether . . . the [complaint is

construed as] alleging causes of action for discrimination under [§] 1983, the Civil Rights Act,

the Americans with Disabilities Act, the Individuals with Disabilities Education Act, or the

Rehabilitation Act, any cause of action based on discrimination requires some factual allegations

rendering plausible the conclusion that [the] [d]efendants' conduct was motivated by [the]

[p]laintiff's membership in a protected class."); *Johnson v. City of N.Y.*, 669 F. Supp. 2d 444,

450 (S.D.N.Y. 2009) (explaining that "[c]onclusory allegations of racially motivated animus are

insufficient," under § 1981 and dismissing claim where the plaintiff "ple[d] *no* facts giving rise

to *any* inference of racially discriminatory intent" (internal quotation marks omitted)).

### III. Conclusion

Accordingly, Federal Defendants' Motion To Dismiss the Second Amended Complaint is

granted in its entirety, and Plaintiff's claims against the Federal Defendants are dismissed with

prejudice.[14]  The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt.

No. 72.)

SO ORDERED.

Dated:      September 29 , 2016
            White Plains, New York

                                    KENNETH M. KARAS
                                    UNITED STATES DISTRICT JUDGE

---

[14] The Court dismisses the claims with prejudice, as Plaintiff already had a second bite at
the apple with his Second Amended Complaint. *See Denny v. Barber,* 576 F.2d 465, 471 (2d
Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. Cty. of
Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016)
(granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at
the apple, and they have proven fruitless" (alteration and internal quotation marks omitted));
*Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30, 2015)
(dismissing amended complaint with prejudice where the "[p]laintiff has already been given one
opportunity to amend his complaint . . . , and there is nothing in his second amended complaint
suggesting that [he] could do better given another opportunity").